2002 OK CIV APP 70

**Jeremy R. CHASTAIN, Plaintiff/Appellee,**

v.

**STATE of Oklahoma, ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.**

No. 96,246.

Court of Civil Appeals of Oklahoma, Division No. 1.

May 31, 2002.

Kenneth Linn, Oklahoma City, OK, for Appellant.

Joel W. Barr, Norman, OK, for Appellee.

Opinion by LARRY JOPLIN, Vice–Chief Judge:

¶ 1 Defendant/Appellant State of Oklahoma, ex rel. Department of Public Safety (State or DPS) seeks review of the trial court's order setting aside DPS' revocation of the driver's license of Plaintiff/Appellee Jeremy R. Chastain (Chastain) for lack of the arresting officer's jurisdictional authority. Having reviewed the record, however, we hold the order of the trial court should be affirmed.

¶ 2 A University of Oklahoma police officer arrested Chastain for operation of a motor vehicle while under the influence of an intoxicating substance, and Chastain refused to submit to breath or blood testing. DPS consequently revoked Chastain's driver's license.

¶ 3 Chastain subsequently challenged the revocation for lack of a valid arrest within the geographical jurisdiction of the OU police officer. An administrative hearing officer sustained the revocation.

¶ 4 Chastain then commenced the instant action for review of the revocation by the trial court. At hearing, the parties stipulated that neither the offense nor the arrest occurred on the OU campus, or on a public way immediately adjacent thereto. State nevertheless asserted validity of Chastain's arrest pursuant to a statutorily authorized "Law Enforcement Services Agreement" (Agreement) negotiated by and between the City of Norman and the OU Board of Regents in 1993, which, as amended by a joint memorandum of the OU and Norman Chiefs of Police in 2000, granted OU police officers jurisdiction to "initiate traffic enforcement actions upon public thoroughfares at any location within the incorporated limits of the City of Norman in response to observed violations of municipal ordinances or state law."

¶ 5 On consideration of the stipulations and argument of counsel, the trial court set aside the revocation, "holding that 74 O.S. § 360.17 combined with the law enforcement services agreement of . . . 1993 and the [subsequent] memorandum agreement . . . is insufficient to grant the campus police jurisdiction to generally enforce Norman municipal ordinances." State appeals, arguing the joint memo agreement of the Chiefs of Police was a statutorily permitted alteration of the OU Police Department's (OUPD) jurisdiction to include the area of Chastain's arrest.

¶ 6 On this issue, Oklahoma statute provides:

Jurisdiction of campus police officers—Authority of campus police departments

The jurisdiction of campus police officers includes the campus and *pursuant to an agreement authorized by this act,* the highways, streets, roads, alleys, easements, and other public ways immediately adjacent to their campus and *any other areas authorized by such agreement.* This delineation of jurisdiction, however, shall not be understood as limiting the completion of any necessary enforcement activities which began within these jurisdictions and are in compliance with the agreements made with the municipality or county sheriff pursuant to this act. In the absence of an agreement, only those law enforcement activities which began on campus may be completed off campus and such activities must be completed in a timely manner. Such law enforcement activities shall only be authorized if the campus police have coordinated

the activities with the local law enforcement agency having jurisdiction in that off campus area. *In addition, a campus police officer shall have jurisdiction in other locations pursuant to an agreement authorized by this act.* Such agreement may authorize the chief administrative officer of the law enforcement agency to request assistance pursuant to the agreement. Campus police officers, commissioned pursuant to this act, shall have the same powers, liabilities, and immunities as sheriffs or police officers within their jurisdiction.

74 O.S. § 360.17(A). (Emphasis added.)

¶ 7 In 1993, the OU Board of Regents and the City of Norman entered the Agreement, as contemplated by § 360.17. The Agreement in relevant part provides:

1. The Police Division of the University of Oklahoma Department of Public Safety, hereinafter referred to as "OUPD," and its duly commissioned and certified police officers have the authority to enforce criminal statutes, Norman municipal ordinances, and University rules and regulations *on all property,* including streets, highways, roads, alleys, easements and other public ways or public property, including streets, highways, and alleys that is *surrounded by or predominantly surrounded by Board owned, leased or rented property.*

2. The OUPD and its duly commissioned and certified police officers shall have the authority to enforce criminal statutes and Norman municipal ordinances *on all property,* including streets, highways, roads, alleys, easements, and other public ways or public areas *adjacent to property owned, leased, or rented by the Board, and adjacent to property, including streets, highways, roads, alleys, easements and other public ways and areas surrounded or predominantly surrounded by Board owned, leased or rented property.*

. . .

11. The parties to this Agreement understand that as time passes, situations change and property ownership and occupancy varies. Parties therefore agree that the Chief Executive Officers of the respective law enforcement agencies are authorized, by the use of joint written memoranda and/or joint written mutual aid agreements and maps, *to delineate* the responsibilities of each respective department and *the geographical boundaries thereof in accordance with the terms of this Agreement.*

(Emphasis added.)

¶ 8 On February 8, 2000, in stated compliance with paragraph 11 of the Agreement, the OU and Norman Chiefs of Police executed and published a joint memorandum "to delineate the responsibilities of each department and the geographical boundaries thereof." That memo provided in pertinent part:

4. Certified commissioned personnel of the University of Oklahoma, Norman Campus, Police Department may, whenever on duty in suitably equipped vehicles, initiate traffic enforcement actions upon public thoroughfares at any location within the incorporated limits of the City of Norman in response to observed violations of municipal ordinances or state law.

5. Certified commissioned personnel of the City of Norman Police Department may, whenever on duty in suitably equipped vehicles, initiate traffic enforcement actions upon public thoroughfares at any location upon property of the University of Oklahoma within or without the incorporated limits of the City of Norman in response to observed violations of municipal ordinances or state law.

¶ 9 As a matter of statutory construction, we are bound to "ascertain and follow the intent of the Legislature." *Bruner v. Sobel,* 1998 OK 60, ¶ 9, 961 P.2d 815, 817. And, the plain language of an enactment governs its construction: "[W]here the Legislature has clearly expressed its intent, the use of additional rules of construction are unnecessary and a statute will be applied as written." *Id.*

¶ 10 So guided, we are convinced that by § 360.17, the Legislature plainly expressed its intent to permit the negotiation of an

agreement between a city and university delineating the jurisdictional boundaries of their respective law enforcement agencies. Indeed, the Oklahoma Court of Criminal Appeals construed the very agreement before us as not unconstitutionally vague in the delineation of jurisdiction, and approved an arrest by an OU police officer on property not adjacent to the OU campus where the offense occurred within the primary jurisdiction of OUPD as described by the 1993 Agreement. *State v. Ockershauser,* 1996 OK CR 42, ¶¶ 10,[1] 11,[2] 924 P.2d 775, 777.

¶ 11 We are likewise convinced that the plain language of § 370.17 permits a city and university to expand the law enforcement jurisdiction of a campus police department beyond the "highways, streets, roads, alleys, easements, and other public ways immediately adjacent to [the] campus" to include "any other areas" as the city and the university might agree. The Agreement in the present case validly and clearly expanded the jurisdiction of OUPD to public ways immediately "adjacent" to the OU campus, as well as "areas surrounded or predominantly surrounded by Board owned, leased or rented property." To the extent the trial court's remarks from the bench or the trial court's order may be read to suggest the city and university could not or did not so validly agree in 1993, the trial court erred.

¶ 12 The question remains, however, whether the Agreement delegated to the Norman and OU Chiefs of Police the authority, by joint memorandum, to *expand* the jurisdiction of OUPD, or *only* to *delineate* the jurisdictional *boundaries previously agreed upon* by the City of Norman and the OU Board of Regents.

¶ 13 We hold the plain language of paragraph eleven of the Agreement between Norman and OU *only grants authority* to the OU and Norman Police Chiefs to *delineate,* by joint memorandum, the jurisdiction of the OU police department *when* "as time passes, situations change *and* property ownership

and occupancy varies," "in accordance with the terms of this agreement." (Emphasis added.) So, where the ownership or occupancy of property within the jurisdiction of either the Norman Police Department or OUPD changes, the Agreement clearly permits the Norman and OU Chiefs of Police to redraw, by joint memorandum, the geographical boundaries of jurisdiction, but *only* in adjustment for the change in ownership or occupancy.

¶ 14 However, we read nothing in the Agreement as delegating to the Norman and OU Chiefs of Police the authority to affect, by joint memorandum, the global expansion of OUPD jurisdiction to include anywhere within the corporate limits of the City of Norman. To construe paragraph 11 of the Agreement absent the geographical limitations of paragraphs 1 and 2 ignores the Agreement's plain language. Further, such a construction would place the Chiefs of Police in the position of renegotiating the jurisdictional limits imposed on the campus police by both the statute and the Agreement's terms without the consent of either the city or university governing authorities. Neither the Legislature, nor the governing authorities of Norman and OU as the parties to the Agreement, intended such a result, or they surely would have so specifically expressed.

¶ 15 In the present case, the parties stipulated that neither the offense nor the arrest occurred either on the OU campus, or on a public way immediately adjacent to the OU campus. Neither of the parties even suggest either an emergency situation, or a change in the ownership or occupancy of OU property as to justify the city-wide expansion of OUPD jurisdiction by joint memo.

¶ 16 While we have previously approved the Agreement as effective to delineate and expand the law enforcement jurisdiction of OUPD as including areas adjacent to, surrounded by, or substantially surrounded by OU property, we have also held the

1. "[T]he Agreement is not void for uncertainty or vagueness."

2. After district court dismissed State's attempted appeal of magistrate's order sustaining criminal defendant's motion to suppress for lack of a valid

arrest within OUPD jurisdiction, on a reserved question of law, the Court of Criminal Appeals held, "[t]he order upholding the magistrate's decision was erroneous."

Agreement does not authorize the Norman and OU Chiefs of Police, by joint memorandum, to expand OUPD jurisdiction beyond the limits of the Agreement. Given the Agreement's delineation of OUPD jurisdiction limited to property and public ways adjacent to or surrounded by OU property, and the parties' stipulation that neither the offense nor the arrest occurred on the OU campus, or on a public way immediately adjacent thereto, we hold the trial court did not err in vacating the order of revocation.

¶17 The order of the trial court is therefore AFFIRMED.

JONES, J., and BUETTNER, J., concur.